participate in our conference after our arguments this afternoon. I believe that they've already asked you to silence your cell phones. I'm not particularly sure if the emergency alert system is going to impact all devices, so I would suggest that even if you have something that is not an iPhone, like an Apple Watch or something else, that you might want to Wilson v. Midland County. Good afternoon, and may it please the court. Joplin seats West Philly for appellant Irma Wilson, who's here with us today. Good. Ms. Wilson was prosecuted and convicted with Ralph Betty working her case on both the prosecutorial and judicial sides of the bench. But she only learned of that structural procedural due process violation after her sentence had happened to expire. So the district court held that she cannot mitigate her federal due process claim in federal court. I'd like to proceed in two parts to explain why this work should reverse. First, the district court relied on Randall v. Johnson, but Randall is no longer good law. In Muhammad v. Close, the Supreme Court disavowed Randall's sole mode of analysis. So under this court's rules of precedent, Randall's not binding, and this court has an obligation to do the right analysis. Second, this court has never done the right analysis. It's a straightforward text in a while. We do exactly your honor, except it hasn't done the right analysis in this context. Under the Supreme Court's recent Tlaib ski decision on which we submitted a 28 J letter. The question is whether Section 22 54 the federal habeas corpus statute supplants and is inconsistent with recognizing noncustodial plaintiffs. Section 1983 claims that high burden is the defendants to carry. They have not and they cannot hear for the simple reason that noncustodial plaintiffs claims do not lie within the core of habeas corpus and are therefore unaffected by Section 22 54. So I'd like to start by expanding on the first issue, which is the continued vitality of Randall. Randall said it was settled that Heckley Humphrey bars noncustodial plaintiffs. Section 1983 claims. But then Muhammad comes along and the Supreme Court says it's not settled. So Muhammad disavows Randall's sole mode of analysis. And under this court's rules of precedent, that means this court has the quote obligation to decide whether noncustodial Section 1983 plaintiffs are ending heck part. So I think this court's analysis in bond billion, which we cite in our briefs, is instructive on this point. Bond billion explains that if an intervening Supreme Court precedent makes it doubtful that this court would conduct the same analysis as it did in Randall, then Randall is now binding. Well, here after Muhammad, it's not only doubtful, it's certain that this court would not conduct the same analysis as it did in Randall. After Muhammad said that the issue is unsettled, no lower court can limit its analysis to saying that the issue isn't settled. But that's that was the full extent of Randall's analysis, so it doesn't bind this panel. Indeed, Muhammad did exactly what Randall said Spencer B. Chemna did not do. The Randall court said that it wasn't willing to cobble together concurring and dissenting opinions from Spencer to hold that the Supreme Court had unsettled what Randall said. Randall read his application to these circumstances. But then Muhammad comes along and the full court in Muhammad says that heck actually never settled this issue. That upends Randall's mistaken reading of heck. It upends Randall's mode of analysis in reaching the outcome that it reached. I have a few additional points on this on this score, your honors. I'd like to point out first that the Tenth Circuit and Judge Easterbrook's well-reasoned opinion dissenting opinion in Savory v. Canyon agree with us that this is indeed the effect of Muhammad. First, if the Randall court had actually done an independent analysis of the relationship between Section 2254 and 1983, as Judge King, you noted that you noted that this court does do in other instances and concluded that Section 2254 does indeed supplant Section 1983 in these circumstances, we acknowledge that this court could only overturn Randall on bunk. But that's not what Randall did. Randall didn't do that independent analysis. All it did was say that heck settled this issue. Muhammad comes along and says heck did no such thing. Again, that is a disavowal of Randall's mode of analysis, which is all that's required for Randall to no longer be deemed binding law. Second, let's say that Muhammad had said the court had no occasion to revisit heck's application to these circumstances. We acknowledge that if that's the word Muhammad used, Muhammad would not have the effect that we say it has. But the word Muhammad used was that we have no occasion to settle the issue in these circumstances. And so again, it's that word that upsets Randall's sole mode of analysis, which was to say that this was settled as the 10th Circuit and Judge Easterbrook have explained. Third, after Muhammad interred Randall's mistake in reading of heck, no decision of this court has revived it. Now to be sure, there are published decisions from this court that recite Randall's rule. But I'd like to borrow from the that because none of those decisions analyzed whether Muhammad abrogated Randall's rule, this court is not bound by those decisions wrote recitation of Randall's rule. The simple import of these rules, your honors, is that it's not just the outcome that matters under these courts rules of precedent. It's how you get there. The Randall panel thought this court couldn't reach the Tlefsky question, you know, the interplay between 2254 and 1983. Muhammad makes clear that that was a mistake. I think there's one more example that would be helpful in kind of one more concrete example that would be helpful in wrapping our heads around this precedent question before I substance of that textual inquiry. And I'd like to point to the Heinz decision that we cite in our brief. Heinz, which relies on this court's prior decision in Invisalign, explains that this court had said a particular issue was not subject to the First Amendment. The Supreme Court came along and said that the opposite is true. But the Supreme Court did not dictate what the ultimate outcome would be under that First Amendment analysis. Similarly here, this court said, heck, settled the issue we're discussing. The Supreme Court in Muhammad comes along and says, again, the opposite is true. It's not settled. But again, it doesn't dictate what the outcome would be under the correct analysis. So in both instances, implementing the Supreme Court's clarification of the law and of the scope of this precedent wasn't outcome determinative. But it did change the way you get to the outcome. And again, under this court's rules of precedent, which look at the mode of analysis, that's what matters. And that's the reason that in these circumstances, Randall is no longer binding. So the resolution of that first question about Randall's continued vitality doesn't mean we win. But it does mean this court must now ask the relevant question for the very first time. And that's, like I said, it's a straightforward textual inquiry. Under Tlefsky, the question is whether Section 2254 supplants and is inconsistent with recognizing non-custodial plaintiffs' Section 1983 claims. The answer is no. Section 2254 does not supplant Section 1983 in these circumstances. To start, Tlefsky reminds us that Section 1983 is presumptively applicable and that it's the defendant's burden to show that it's not in the particular circumstance. Here, the defendants have pointed to nothing in Section 2254 or the surrounding habeas procedures that even addresses non-custodial individuals. What impact does Article 11-072 of the Texas Code of Criminal Procedure have on that issue? I believe Your Honor is referring to the Texas state habeas statute. Is that right? Sure, Your Honor. So that is really the defendant's only response to the, the fact that Section 2254 does not govern non-custodial plaintiffs. They say that Ms. Wilson must succeed on that state habeas claim before she can sue on Section 1983, right? But this court actually rejected exactly that argument in the recent Hicks decision on which we submitted a 28-J letter. Hicks rejected the notion that, heck, bars any Section 1983 claim that is also cognizable in habeas at the time it accrues. Hicks is distinguishable, right? Because the only thing that, I think the only issue in Hicks was whether or not, I think he was only challenging his release. He wasn't challenging the sentencing or their underlying conviction, as I think is going on in this case. Sure, Your Honor. I understand that, but I think that the solely on over-detention and solely on the release issue. No, I understand, I understand that the circumstances were different, but the argument that this court rejected in Hicks is the same one that they're making here. The argument that they're making is that because Ms. Wilson's claim happens to be cognizable in state habeas, that she is barred from bringing it under Section 1983. So, Hicks did reject that argument. I want to explain, I want to go on to now explain why that rejection, the rejection of that argument makes sense in these circumstances as well. First of all, contrary to settled law, which says that you cannot impose an exhaustion requirement on Section 1983, which is exactly what that would amount to. Hick itself reiterated that you can't do that. Second, the fact that a state statute happens to extend state habeas beyond habeas' core to encompass people who are not in custody for purposes of federal law, that does not change the scope of federal law. It doesn't change the meaning of federal law, and it doesn't affect the textual interplay between Section 2254 and Section 1983, and that's the question that matters. So, the Supreme Court actually made this clear recently in Nance v. Ward. It made clear that Section 2254 only concerns itself with the core of habeas corpus, and that core is limited to purposes of federal law. Nance v. Ward defines the core of habeas corpus as having essentially two elements. It says first that it applies to people who are in custody for purposes of federal law and people who are challenging the validity of a conviction or sentence. If either one of those elements is missing, then you're not in the core of habeas corpus. Well, the first element is missing here. We don't have a person who is in custody for purposes of federal law. Section 2254 simply doesn't reach such people, and so, again, if you do that textual analysis that Tulesky compels, you see that 2254 is concerned with one set of people. Section 1983 is concerned with a different set of people. It simply cannot be that in those circumstances, Section 2254 supplants and is inconsistent with recognizing the unambiguously conferred Section 1983 remedy here. Now, I do want to point out that there are circumstances where even a non-custodial plaintiff might be required to show favorable termination via state habeas or some other method before suing under 1983. That's if favorable termination is an element of the claim that they bring, but that's an inquiry that's separate and apart from the interplay between 2254 and 1983. I think an example will help illustrate this, too. Thompson v. Clark is a recent Supreme Court decision. That case arose out of the Second Circuit, which, as we explained in the briefing, does not apply, heck, to non-custodial plaintiffs. The plaintiff in that case was non-custodial, and yet the whole case, including in the Second Circuit, was about favorable termination. The reason is because favorable termination was an element of the claim that the plaintiff was bringing, and it was a malicious prosecution claim because it was a malicious prosecution claim. It had that element. Now, here, by contrast, we explain at length in our reply brief why favorable termination is not an element of Ms. Wilson's structural procedural due process claim. In short, it doesn't make sense to structure the proceeding itself rather than an evidentiary defect that's specific to a particular criminal defendant. To say it maybe really simply is that it's to say that the malicious prosecution torts elements don't map onto a claim like ours that's unconcerned with questions of guilt or innocence, a structural claim like this one. Ms. Wilson's claim has neither of the potential bases for imposing a favorable termination requirement. First, she's not in custody for purposes of federal law, and she wasn't when she discovered this violation, so there's no collision with Section 2254, and there never was. Second, her claim does not have a favorable termination element in and of itself. With neither of those conditions present, she has a Section 1983 claim. I just want to make one final point, Your Honors, and I'm happy to answer any questions you may have as well. If the panel happens to disagree with us about Muhammad's effect on Randall and feels that it is bound and that it continues to be bound by Randall, we'd respectfully ask that you urge the full court to take this issue up en banc. Obviously, for the reasons I've said, we think that this court has the authority and, indeed, the obligation to reach the merits here. If you disagree, this court should take it up en banc because Randall is a two-page per curiam decision in a pro se case. It limits itself to both an analysis and a holding that the Supreme Court and most circuits have seriously called into question. It doesn't ask any of the relevant questions, the ones required under Tlefsky to have done post-Muhammad, and it reaches a result that keeps plaintiffs like Ms. Wilson from vindicating their constitutional rights via their unambiguously conferred Section 1983 remedies. It does all of that in disagreement with six Supreme Court justices, a majority of circuits, and the well-reasoned dissenting opinion of Judge Easterbrook in the decision from the Seventh Circuit. Now, of course, it is this court's prerogative to disagree with those justices and those judges on the merits, but if it does so, the court should at least say why. It's never done that because Randall limited itself to this misreading of Heck. If your owners have any questions, I'm happy to field them. Thank you. Thank you very much. May it please the Court, Lane Rouse on behalf of the appellees of Midland County, Ralph Petty, along with Co-Counsel Steve Kaiser on behalf of Al Shoury. I'll be making the argument for all the appellees and that's all been put on me. The court should affirm the lower court's ruling. Randall is good law, contrary to the appellate's argument, and the court has been doing the correct analysis for the last 20 years based on a reading of Heck v. Humphrey. Randall continues to be to the pecurium opinion of Pahala v. Close. In fact, as recent as August 9 of 2023, this court in a published opinion cited to and relied upon Randall. It's an opinion Collins v. Dallas Leadership Foundation where it cited Randall in support of the standard that has been applied and continuously applied in the circuit for the last 20 years. In that case, the court, while it did not make any mention of the Muhammad opinion in that decision, the court has previously addressed the Muhammad footnote issue in at least two prior unpublished opinions, Black v. Hathaway and Thomas v. Louisiana, which were both cited to in our brief. In an unpublished opinion in August of August 25, 2023, this court also cited Randall in a separate decision, continuing to rely upon the authority of Randall. The Fifth Circuit for the last 20 years has continuously upheld it. It has had opportunities to revisit it, whether based on arguments of Muhammad or other arguments raised, but it has continued to apply the Heck v. Humphrey favorable termination requirement regardless of whether individuals are incarcerated or not. Even in the opinion that the appellants offered to the court, Hicks v. LeBlanc, which Judge Douglas recently noted a distinguishing issue in that case compared to this one, it illustrates how what is going on in the Heck v. Humphrey and how the Fifth Circuit has continuously applied it is has been consistent. It's not the status of the incarceration that matters, whether the favorable termination requirement is mandated, at least under Heck. What matters is the type of claims, whether the claims of what Wilson is doing is seeking to challenge or invalidate an underlying judgment of conviction or a sentence. In the Hicks v. LeBlanc case, there the underlying prisoners were being unlawfully detained past the time of their sentence, but they were still incarcerated. They remained incarcerated and therefore habeas could potentially still be available to provide the relief that they were seeking. But what the court said in that case, because those prisoners in their petition for relief filed under section 1983 were not seeking to overturn a judgment, conviction, or sentence. In fact, they were seeking to uphold the sentence as they had completed that sentence. Are those the New Orleans cases? Those are New Orleans cases. Yes, Your Honor. And that was actually something that the Hicks noted that that was an issue in the Louisiana prison system of prisoners being held past their sentence. But what the issue shows is the core of habeas or the domain of habeas. It's not necessarily dictated by how the habeas statute in its current form may have been structured. The core of habeas, at least with respect to Heck's favorable requirement, concerns the idea of parallel litigation, a civil claim brought alongside a criminal judgment where that civil claim is then used to attack, collaterally attack, or undermine the validity of the criminal. What the courts emphasize in that case is the civil world should stay away from the criminal world. There's a separate system in place because there are separate policy considerations that are involved when we go about collaterally attacking an underlying criminal judgment. That was the opinion of Heck that has been supported over and over in opinions written by this circuit and in the Supreme Court. What would have been the correct remedy for her to seek? The correct remedy for her to seek would have been obviously an immediate appeal, which she did. She did not appeal it any further than the Court of Appeals level. There's one more level that she could have done. I suppose she could have appealed ultimately to the U.S. Supreme Court. And then on the habeas side, within the way the Texas statute is written, there is an available habeas remedy that she could have sought after her conviction. That specifically applies to those that are under community supervision. So it's not that there was no remedy available, but I think the point is, even if there's not, that is a realm that is dictated by federalism concerns, policy concerns that are addressed under the habeas statute in its construction. If there's an issue with the remedy, then under Heck v. Humphrey and the decision that's made there, the decisions, the issues need to be addressed within the habeas statute. The Muhammad comment talking about settling a dispute or settle the dissenting opinions from Heck and the concurring opinion in the Spencer decision, the arguments that are made there are really in response to a shrinking, at least of how the federal habeas statute was created. Looking at the history of habeas and how it expanded to include the Great, well, what was referred to as the Great Writ, which resulted in a number of cases flooding into the court system. And then subsequently, the court began to create different rules to strike back and to limit those number of cases. Eventually, Congress stepped in and further limited the relief with the Anti-Terrorism Act. And what those did is it restricted the potential access to habeas. And the dissenting opinion in the Supreme Court seemed to be addressing the shrinkage of access to the habeas corpus for relief. And that seems to be the issue. But that doesn't mean that 1983 then comes in as a stopgap to help fill in areas where 1983 shouldn't belong, at least according to Heck v. Humphrey. In the Supreme Court decision, McDonough v. Smith in 2019, the Supreme Court discussed how Heck's concern was parallel litigation, civil claims running along criminal actions where the civil claims sought to undermine or undercut those criminal actions. And Heck sought to resolve it with the favorable termination requirement. And with the language that's used there, it's that civil torts should not apply to claims that are within the domain of habeas corpus. Again, the issue is, I think, where appellants and appellees would strongly disagree is, what is this core idea? Is the core idea limited to those that are incarcerated? Or is the core idea what Heck focused on and what the Fifth Circuit in its decision at Randolph has applied? And that is the parallel running of multiple claims and the collateral attacking of state court criminal judgments. This is also not a case, well, actually, let me back up and discuss the Mohammedan analysis just briefly. Again, the Mohammed case, ultimately the decision was Mohammed. Heck did not apply in the Mohammed opinion because the underlying claim did not seek to challenge or invalidate the underlying conviction or the sentence. So the ultimate analysis in Mohammed was Heck did not apply in that case. And that led to the footnote where the court was noticing this was not the occasion where Heck did not apply to, I'll use the word address, the dissenting opinion and the concurring opinion in Spencer, which vocalized the arguments that appellants are offering to the court today. It's ironic then that taking that footnote, that footnote where the court is specifically stating we're not going to address it, that now somehow abrogates or challenges Randolph decision. Again, this is not an argument that the Fifth Circuit has ever adopted and Mohammed was a 2004 opinion. So we're almost 20 years into the footnote and not yet has one panel within the Fifth Circuit recognized that this was the effect of that footnote. But based on the argument in using the word settle, what appellants argue is that when the Fifth Circuit at Randolph was reading Heck and called Heck's conclusion of avoiding this parallel litigation world, that the conclusion of Heck unambiguously results in a conclusion that Heck, the Heck favorable termination requirement that applies regardless of whether an individual is incarcerated or not, that's a reading of Heck. That's not necessarily a reading of the dissenting opinion or the Spencer opinion. Even so, Randolph did squarely address whether it would adopt the Spencer arguments and along with the Heck, along with the Randolph opinion that an apparent majority of the court may have adopted a different rationale. But Randolph specifically decided not to adopt that analysis. This is also not a case on which, in Appellee's view, it would be proper to consider crafting a or attempting to change law. Well, if we decided to do that, the impact in terms of just volume would be significant, wouldn't it? It most likely would, Your Honor, because what it would do is almost create a third access of habeas. You would have individuals that as soon as their incarcerated status is over, all of a sudden they would potentially have a right to assert a 1983 claim. The idea of the Heck v. Humphrey is that once they claim without the favorable termination requirement, that claim does not exist. So, for limitations purposes, it's not running because it ceased. It does not exist until it is shown that that conviction is overturned. But if we change the analysis to base it on incarceration, once the then it would have free access to potentially challenge their conviction. The root question is, if you're going to do something with that kind of a ramification, the question is, whose judgment? Who should make that judgment? Right? I mean, it has potential enormous consequences in terms of the way people are treated in the system. And that's why they're here today. But it isn't just a matter of the appellant here. It's a potentially far-reaching consequences in terms of volume of litigation. And the question is, who is supposed to make that decision? We're talking about one person here, an important person, somebody we need to pay attention to. Yes, Your Honor. But who is it that, when you think about the consequences of the decision, who is it that ought to be making that decision? The unintended, if the court asks me, the unintended consequences of ruling in favor of this one individual and then the impact on the societal system as a whole. Yeah, that's the question. Ultimately, with respect to this circuit, it would be an en banc panel, the entire circuit, considering the... No, that would be good. But ultimately, it's the Supreme Court. And the Supreme Court, at least as this court interpreted it, in Heck v. Humphrey, came to the decision that we're going to keep the Section 1983 apart from the habeas corpus. Habeas corpus is the realm where Congress is expressing its policy decisions in terms of federalism concerns, and in terms of when is it best to overturn and how should we go about challenging state court judgments and sentences, versus 1983, which is a general statute, generally... Where do the other circuits fall on that issue? Excuse me, Your Honor? Where do the other circuits fall on the custodial issue? Your opposing counsel mentioned that the Second Circuit treats it differently. There is a split in authority. The Fifth Circuit's not alone in its approach, but there are other circuits that have different approaches. And that is very true. And in order to resolve that, it ultimately would be up to the Supreme Court to decide what is... Has there been a floodgate issue in those other circuits that recognize a different rule for non-custodial? I don't have any studies, Your Honor, that compare the amount of litigation coming in under Section 19883 as a third habeas, is what I may have referred to it as just a second ago. So I don't have anything that I can cite, Your Honor. If the court would like some reference for some studies, I'd be more than happy to provide some supplemental briefing, but I do not have any. But at least as it would apply in this circuit to overturn Randall, I think does open up those questions, which involves a lot of other considerations and a lot of other rules in how are we going to potentially limit the cases so that someone, as soon as they're released, can't just turn around and challenge a claim. Or if someone never is incarcerated, what prevents them as soon as they have a plea deal in place and they never had to go to incarceration, they never had to spend any time in prison from turning around and challenging it under 1983. There's systems in place, at least what we have in place as of right now on how to handle it. But again, the consideration, at least from Peck v. Humphrey, is where is it best to handle a challenge to an underlying conviction? And that's under the habeas statute in those policies. If there's an issue with how those statutes are drafted in allowing people to collaterally attack or continue to challenge underlying state court convictions and sentences, then those should be addressed in those policies, but not in a general statute of Section 1983 designed to address general grievances. You think that's consistent with the logic of Peck? You think that's consistent with the history of habeas and how it has expanded over time to at one point embrace a very large amount of claims and very freely allow access to challenge and then shrinking over time, whether by the Supreme Court in subsequent decisions or by Congress. We think this is consistent with how the Fifth Circuit has been ruling on these cases for some 20 years now. And it's consistent also with how the Supreme Court has interpreted Peck's decision, talking about the concern of the parallel litigation. Again, and this is not a case that even FAP actually would be a good one to support a reconstruction or rethinking how to redo this law. You had an individual that was convicted 20-some years ago. It was tried to a jury. It was taken up on appeal. The one error that was noted up on appeal was actually waived by Pallett's counsel. There's an attempt at analogizing this case to a structural due process issue that was found in a separate case by the Court of Criminal Appeals of Texas. But when we look at the pleadings in this case, they're factually dissimilar from the case that or to show an alleged structural due process claim. This is not a good claim to try to reinvent or rethink what is the best way to handle these issues. The point has been made clear that Randle is still good law. The court has been doing the right analysis in its reading of Peck and that the Randle decision and the court's continued application of it is faithful to the tenets of Peck to avoid the parallel litigation and, as Judge King noted, potentially opening the floodgates of additional . . . I always wince when someone uses the word floodgates, but you have individual cases that come in here that have enormous ramifications in terms of the whole system. And were we to accept the argument that the appellant is making now, which would be a first time to accept it, the implications of that are enormous. I think that is correct, Your Honor. And so with that, the appellees would urge the court to affirm the district court's ruling. I appreciate your time, Your Honor. Your Honors, I know my time is limited, but I have four points that I'd like to make. I'd like to start with Judge King's concern about floodgates. I think it's important to note here. I think that was my word, not Judge King's word. But it is . . . this case, were we to accept your argument here, would have enormous ramifications in terms of the way the law currently functions and the volume of litigants. Your Honor, this rule has been . . . the rule that we propose has been the rule in the majority of the country for over 20 years. In the Second Circuit, in fact, this has been the rule since before Mohammed even. And yet, no judge on the Second Circuit has ever clamored for the reconsideration of this because it hasn't led to a floodgates problem. And there's a few reasons for that, Your Honor. One reason is that the federal system has ways of kind of kicking out claims that don't belong in federal court under rules of estoppel, maybe statute of limitations issues. So I think there are a lot of reasons that neither the Second Circuit nor any of the other majority are clamoring for reconsideration of this. This is the rule in most of the country. So I think . . . and I think one of the additional reasons for that is because some of these claims, Your Honor, like I said in my opening, they have a favorable termination element in and of themselves. So regardless of this interplay between 2254 and 1983, you might have to meet favorable termination anyway. And that's going to be hard in most cases. But in this case, because it's a structural due process claim, we don't have that problem. So this is kind of a, it's a rare bird in some ways. And the other point I want to make, and it's related to this one, which is, in essence, Your Honors, they're kind of trying to take . . . they're mischaracterizing the claim that we have here. They're trying to say that we're really attacking the evidence in Ms. Wilson's trial. We're not. We're talking about a structural procedural due process claim and one that was concealed from Ms. Wilson until well after her trial and well after her sentence expired. So I want to make sure that we're all on the same page about what this claim is and that why they shouldn't be allowed to take advantage of the fact that the claim that it's an issue here has been concealed from Ms. Wilson until recently. I do have other points here if Your Honors want to hear them, but I think that is my time. Sorry? The brief is good, so we appreciate that. Thank you. I appreciate it, Your Honor. Thank you. Thank you very much. Thank you.